THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHRISTOPHER LYDA, Defendant-Appellant.

(No. 73-298;

Second District (2nd Division)—April 29, 1975.

Frank Wesolowski, Jr., Public Defender, of Wheaton (Robert H. Heise, Assistant Public Defender, of counsel), for appellant.

John J. Bowman, State's Attorney, of Wheaton (Ralph J. Gust, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Defendant, Christopher Lyda, was indicted by the Du Page County grand jury on one count of possession of cannabis and one count of obstruction of justice. He was found guilty on both counts at a bench trial and sentenced to concurrent terms of 1 to 3 years on the possession count and 1 year on the obstruction of justice count. Defendant argues on appeal that the trial court erred in denying his motion to suppress because of lack of standing, that he was convicted under a fatally defective indictment, that the court erred in entering judgment and sentences for two offenses arising out of the same conduct or transaction, and that he was not proven guilty beyond a reasonable doubt.

The prosecution evidence indicated that on April 18, 1972, defendant walked into a pool hall and said that he had 19-20 "nickel" bags of marijuana to sell. Defendant and one Neely and one Macias then went to a storage room where defendant removed a plastic bag containing smaller bags from his crotch area. Neely asked defendant to stay and play pool. Defendant got some balls from Neely, took off his jacket and took the bag from his crotch area and placed it in a sleeve of the jacket,

and played pool with one McCreary. Neely called the Wheaton police and spoke to Detective Leonard about defendant. Shortly thereafter Officer Matthews came to the pool hall. Matthews asked defendant to get his jacket and step outside to talk about some marijuana. Defendant told Matthews his jacket was in the washroom, so they both went there to get it. Matthews searched the washroom and did not find the jacket and again asked defendant to step outside.

Defendant then said that he wanted to use the bathroom and walked into the cubicle. Matthews grabbed defendant's left arm and defendant shoved Matthews away. Matthews then arrested defendant. Neely and another man named Doney then entered the washroom. Matthews tried to keep Doney in view. Defendant then returned to the cubicle, removed a clear plastic bag from his crotch area and flushed it down the toilet. Defendant blocked Matthews from retrieving this bag. The substance in the bag appeared to be marijuana.

Defendant then submitted to arrest and, when asked by Matthews where his jacket was, nodded toward the wall. Matthews asked which jacket it was. Neely pointed it out, and Matthews took it. At the police station defendant denied owning the jacket which was identified by others at trial as his jacket. A large plastic bag with nineteen smaller bags inside it was found in the jacket sleeve, each bag containing marijuana.

The defense evidence included a denial by defendant that he had any marijuana and a denial of a conversation about the sale of marijuana. McCreary, a defense witness, said defendant simply came up to him and asked him to play pool shortly after defendant came in. McCreary and defendant said that defendant and Doney went into the washroom together after defendant was arrested. McCreary stated that Neely went to the wall and got the jacket, which he gave to Officer Matthews.

There was also testimony that later in the afternoon, subsequent to defendant's arrest, some girls came to the pool hall and took defendant's jacket to defendant's house. At trial, defense witnesses identified this second jacket as belonging to defendant, based on a patch on the jacket which was not on the jacket seized by police.

Finally there was evidence that Macias and Neely, who were witnesses for the prosecution, could be biased. Macias had minor charges pending against him for which he expected leniency in return for his testimony. Neely was owed money by defendant and there was testimony that Neely would not testify against defendant if defendant paid back the money he owed.

The issues presented on appeal are:

I. Did the trial court err in denying defendant's motion to suppress evidence because of lack of standing?

II. Was defendant convicted under a fatally defective indictment?

III. Did the trial court err by entering judgment on both offenses and sentencing defendant to concurrent terms for two offenses which arose out of the same act, conduct, or transaction?

IV. Was defendant proven guilty beyond a reasonable doubt?

■■■ I. It was held below that defendant had no standing to move to suppress the evidence against him because he denied owning the jacket in which the marijuana was found. It was held that absent a proprietary interest in the jacket, defendant could not raise the question of an invalid search and seizure. Under *Jones v. United States*, 362 U.S. 257, 4 L.Ed.2d 697, 87 S.Ct. 725, automatic standing to move to suppress is conferred upon a defendant where possession of the evidence seized is an element of the offense for which the defendant may be convicted. The continuing vitality of the *Jones* rule was indicated in *Simmons v. United States*, 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967. In *Brown v. United States*, 411 U.S. 223, 36 L.Ed.2d 208, 93 S.Ct. 1565, the Supreme Court specifically refused to decide the continuing vitality of the *Jones* rule, in light of the fact that *Simmons* may have made it unnecessary. The *Jones* rule was restated in Illinois in 1966. (*People v. DeFilippis*, 34 Ill.2d 129.) *DeFillipis* also went beyond *Jones* and extended automatic standing to cases where possession merely formed the basis for a conviction, but was not an element of the offense charged. In *People v. McNeil*, 53 Ill.2d 187, *DeFilippis* was overruled insofar as it extended automatic standing beyond the *Jones* rule. It is clear that the *Jones* rule was left untouched and of continuing validity. (See also *People v. Teague*, 15 Ill.App.3d 479, 489.) As possession was an element of the offense charged in the instant case, defendant had standing to move to suppress.

However, the fact that defendant had standing does not mean that the evidence in the instant case should have been suppressed. Defendant here had a full hearing on his motion to suppress. At the end of the hearing, the judge denied the motion on the basis of lack of standing. From the evidence adduced at the hearing on the motion to suppress it is seen that the motion to suppress is to be denied because the search and seizure involved here was in compliance with the fourth and fourteenth amendments of the United States Constitution. When an arrest is

made, it is reasonable for the arresting officer to search for and seize any evidence on the arrestee's person which the arrestee might conceal or destroy and to search the arrestee's person for any weapons which the arrestee might utilize, as well as to search the area into which the arrestee could reach to grab a weapon or destroy or conceal evidence. (*Chimel v. California,* 395 U.S. 752, 23 L.Ed.2d 685, 89 S.Ct. 2034.) Similar authority for search and seizure by an arresting officer is found in section 108—1 of the Code of Criminal Procedure. (Ill. Rev. Stat. 1973, ch. 38, par. 108—1.)

■■ The jacket in the instant case was found to be defendant's. After defendant was arrested, Officer Matthews asked where his jacket was. There was testimony that defendant nodded toward the wall where from one to several jackets were hanging on hooks and said that his jacket was over there. Neely, who had seen defendant hang up his jacket when he came ·in and who had seen defendant wearing that jacket many times, pointed out the jacket. Defendant and several friends of his denied that the jacket seized was defendant's. The judge below recognized that a question of credibility was present and specifically stated after hearing all the witnesses that he did not believe defendant's testimony nor that of Fran Gasper, who testified favorably for defendant. The trial was a bench trial and it was up to the judge, as the trier of fact, to ascertain from observing the demeanor of the witnesses which of them was telling the truth. He did so, and his determination is not to be overturned on appeal unless it is against the manifest weight of the evidence. Looking at the entire record we cannot say that the findings of the judge below were against the manifest weight of the evidence.

After defendant was placed under arrest, the record indicates that Officer Matthews took his coat from the wall and took it along to the police station, where it was found to contain marijuana. In *Parker v. Swenson,* 332 F.Supp. 1225 (E.D. Mo. 1971), the arrested suspect was allowed to collect several effects and opened a locker door and took out a paper bag. It was held that under *Chimel* the police could search that bag. In *United States ex rel. Falconer v. Pate,* 319 F.Supp. 206 (N.D. Ill. 1970), *aff'd,* 478 F.2d 1405 (7th Cir. 1973), *cert. denied,* 414 U.S. 1094, (1973) the police awakened suspects in a motel room. The police searched clothes laying on the floor and under the beds and found incriminating evidence. This search was held valid under *Chimel.* In *United States v. Manarite,* 314 F.Supp. 607, (S.D. N.Y. 1970), a Federal agent went to a closet to get the arrested suspect a dress to wear, after telling her he would have to get a dress for her and receiving no protest. Once inside the closet he saw evidence which he seized. Later the suspect

told the agent she wanted a raincoat from the closet. While getting it, the agent saw more evidence which he seized. These seizures were held valid under *Chimel.*

■■ While not identical factually to the instant case, these cases are sufficiently analogous to indicate that the search and seizure of the jacket here was proper. Defendant had already gotten rid of some evidence in Officer Matthews presence. Officer Matthews acted reasonably under *Chimel.* Indeed, it would have been unreasonable, in light of what he personally had seen, to take defendant to the station and leave the jacket there. Had the officer left the jacket and gotten a search warrant for it, it would most likely not have been there on his return with the warrant. Given the personal observations of the officer and the fact that it was made known to him that defendant had a jacket hanging nearby on the wall, he acted properly in taking the jacket to the station, where the incriminating marijuana was found.

II. Defendant contends that Count II of the indictment is fatally defective.

Count II of the indictment read:

"The Grand Jurors * * * present that on or about the 18th day of April, 1972 at and within Du Page County, Illinois, CHRISTOPHER LYDA committed the offense of OBSTRUCTING JUSTICE in that he did with the intent to prevent the apprehension or obstruct the prosecution of Christopher Lyda destroy physical evidence, and prevent Jay Matthews, who defendant knew to be a Peace Officer, from recovering said evidence, in violation of Illinois Revised Statutes 1971, chapter 38, section 31—4(a) * * *."

The applicable definition of obstructing justice in section 31—4(a) of the Criminal Code is:

"A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts: ·

(a) Destroys * * * physical evidence * * *."

Conceding that the indictment is phrased in the words of the statute, defendant first contends that it does not recite what physical evidence was destroyed.

■■ An indictment for a statutory offense must either set out the offense in the language of the statute or specifically set forth the facts which constitute the crime. In any case whether it is sufficient that an indictment is merely framed in the words of the statute must depend on whether the words of the statute so far particularize the offense as by their use alone to notify the accused of the precise offense charged

against him. *People v. Abrams,* 48 Ill.2d 446, 459; *People v. Lee,* 48 Ill.2d 272; *People v. Mills,* 40 Ill.2d 4; *People v. Patrick,* 38 Ill.2d 255, 258; 21 I.L.P. *Indictments and Informations* § 55.

■■ The question here is whether "physical evidence" which is the subject of the crime must be described with more particularity and certainty. Where a statute uses general or generic terms in defining the offense, it is not sufficient to charge the crime in the same general or generic terms used in the statutory definition but the particular offense or acts which accused is charged with having committed must be alleged. *People v. Aud,* 52 Ill.2d 368; 42 C.J.S. *Indictments and Informations* § 139 (1944); 41 Am.Jur.2d *Indictments and Informations* § 93 (1968).

In the instant case "physical evidence" forms an essential element of the offense charged and it should be described with sufficient specificity or particularity that the accused is informed of the offense with which he is charged and enabled to prepare his defense, and further, that he is protected against being later prosecuted for the same crime.

We believe that Count II of the indictment is void and therefore the sentence under that count must be vacated. Accordingly, the third issue raised by defendant need not be discussed.

IV. Defendant argues that because of the contradictory testimony he was not proven guilty beyond a reasonable doubt on the possession charge. Witness credibility was the main question before the trial judge here. The judge resolved that question in favor of the prosecution witnesses. The evidence indicated that defendant first offered to sell marijuana and then took a bag of marijuana from his crotch area and put it in the sleeve of his jacket where it was later discovered by police. Defendant's jacket was identified by two witnesses at the pool hall who knew where defendant had hung up his jacket. Defendant was also seen flushing what appeared to be a bag of marijuana down a toilet.

In support of his argument, defendant cites *People v. Jackson,* 23 Ill.2d 360, *People v. Evans,* 72 Ill.App.2d 146; *People v. Faulkner,* 83 Ill.App.2d 54. No useful purpose would be served by a prolonged discussion of these cases. Suffice it to say that each of them involved reversed convictions for possession where the drug involved was *not* found in clothing proven to belong to the accused.

■■ In order for defendant to be proven guilty of possession of marijuana, the prosecution had to establish beyond a reasonable doubt that defendant knowingly possessed the marijuana. (*People v. Mack,* 12 Ill.2d 151.) Looking at the entire record in light of the accompanying problem of witness credibility, we are convinced that the prosecution sustained that burden of proof.

For the foregoing reasons, the judgment of the Circuit Court of Du

Page County pertaining to defendant's conviction and sentence for possession of cannabis is affirmed. Its judgment pertaining to the conviction and sentence for obstruction of justice is reversed.

Affirmed in part and reversed in part.

T. MORAN and GUILD, JJ., concur.