[No. 46738-7-I. Division One. December 24, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. PARRIS ADRIAN DUGAS, *Appellant*.

*Mark D. Mestel*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *David F. Thiele* and *Seth Aaron Fine, Deputies*, for respondent.

BAKER, J. — Parris Dugas was attempting to leave an apartment complex following an argument with his girl friend. Police were dispatched to the complex after receiving a report of domestic violence and arrived just as Dugas was approaching his vehicle. The police stopped Dugas to talk to him and, at his request, gave him permission to remove his jacket and place it on his vehicle. He was

arrested shortly thereafter for domestic violence and transported to the jail, but the jacket remained on the vehicle. An officer who remained at the scene impounded the jacket, and a subsequent search of it yielded contraband in a closed container found in the jacket pocket. Dugas was convicted for possession of a controlled substance. He appeals the denial of his motion to suppress, arguing that the police exceeded the scope of an inventory search when they opened the closed container located in the closed pocket. We agree, and reverse.

I

Two officers were dispatched to an apartment complex to investigate a report of domestic violence. Dugas was observed in the parking lot of the apartment complex walking toward a white Jeep. The officers contacted him because the dispatch had broadcast that the suspect would be leaving in a white truck. During the contact, Dugas admitted that he had had an argument with his girl friend.

One officer stayed with Dugas while the other left to speak with the victim of the alleged domestic violence. Dugas, stating that he was hot and sweaty, requested and was given permission to remove his jacket. He placed the jacket on the hood of his vehicle. After talking with the victim, the officers determined that they had probable cause, and arrested Dugas.

One officer then transported Dugas to the jail, while the other officer remained at the scene. That officer noticed that Dugas' jacket was still on top of the vehicle. The officer seized the jacket and searched it. No consent to search or seize the jacket was sought. During the search, the officer found a closed key ring pouch in the jacket pocket. The officer opened the pouch and found several small white rocks that later tested positive for cocaine. Dugas' unlocked Jeep was not impounded and remained in the parking lot.

Dugas was charged with possession of a controlled substance. He moved to suppress the evidence on grounds that the warrantless search of his jacket violated his constitu-

tional right to privacy. The officers testified that the routine procedure followed for an impound search was to record all items impounded, including items in jacket pockets, in order to avoid false claims and to discover drugs and any dangerous contents. The court denied the motion, holding that a lawful impound search had been conducted. Dugas appeals.

## II

■■■ We review the validity of a warrantless search de novo.[1] As a threshold matter, the State argues for the first time on appeal that Dugas had abandoned the jacket, and therefore no longer had a reasonable expectation of privacy in it. We conclude that under the totality of the circumstances and objective standards, Dugas did not abandon his jacket by simply placing it on the hood of his car and not mentioning it after his arrest.

Law enforcement officers may retrieve and search voluntarily abandoned property without implicating an individual's rights under the Fourth Amendment or under article I, section 7 of our state constitution.[2] Abandonment is an ultimate fact or conclusion based generally upon a combination of act and intent.[3] Intent may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment should be considered. The issue is not abandonment in the strict property right sense, but rather, "whether the defendant in leaving the property has relinquished her reasonable expectation of privacy so that the search and seizure is valid."[4] In the law of search and seizure, the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy

---

[1] *United States v. Van Poyck*, 77 F.3d 285, 290 (9th Cir. 1996).

[2] *State v. Reynolds*, 144 Wn.2d 282, 287, 27 P.3d 200 (2001).

[3] 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 2.6(b), at 574 (3d ed. 1996).

[4] *United States v. Hoey*, 983 F.2d 890, 892-93 (8th Cir. 1993) (citations omitted); *see also United States v. Nordling*, 804 F.2d 1466 (9th Cir. 1986).

so that its seizure and search is reasonable within the limits of the Fourth Amendment.[5]

Here, Dugas cannot be said to have voluntarily relinquished his expectation of privacy simply by placing his jacket on top of his vehicle. The State attempts to analogize this case to *United States v. Morgan*,[6] where the court concluded the defendant abandoned his property when he threw his bag containing contraband in his friend's yard that abutted an open field.[7] *Morgan* is inapposite. Dugas did not throw anything away, but rather asked the police if he could remove his jacket because he was hot and then placed the jacket on the hood of his vehicle.

It is true that Dugas did not ask the police to leave his jacket with his girl friend or in his car. At the suppression hearing, Dugas testified that this was "[b]ecause my girlfriend would have taken it . . . with the Jeep. And I had asked them to tell her to take the Jeep, which they said they did." But the officer seized the jacket very soon after Dugas was removed from the scene. Taking into consideration all of the relevant circumstances, we conclude that Dugas did not voluntarily abandon the jacket.

■ Next, Dugas argues that when a suspect is arrested and leaves a jacket at the scene, it is improper for the police to impound the jacket for safekeeping. We disagree. A police inventory of an arrestee's possessions "presents no problem when a person is arrested in some public place while carrying a suitcase or like object, for it would be clearly improper for the police to simply leave the container unattended at the scene of the arrest."[8] We reach the same

---

[5] *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

[6] 936 F.2d 1561 (10th Cir. 1991).

[7] *Morgan*, 936 F.2d at 1570-71.

[8] 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 5.5(b), at 180 (3d ed. 1996); *see United States v. Perea*, 986 F.2d 633 (2d Cir. 1993) (duffel bag defendant transported while riding in taxi subject to impound upon defendant's arrest); *State v. Quinn*, 565 S.W.2d 665 (Mo. Ct. App. 1978) (where defendant arrested while sitting on steps of residence, brown paper bag defendant put down as officers approached could be seized for safekeeping).

conclusion with regard to wearing apparel removed and laid aside by the arrestee.[9]

 Next, we consider whether it is reasonable for police to search the contents of closed containers found in a jacket incident to an impound. We hold that it is not. Dugas was no longer present, he did not consent, and there was no indication of dangerous contents. There were no exigent circumstances.

A warrantless search is presumed unreasonable except in a few established and well-delineated exceptions.[10] Searches pursuant to a lawful arrest and routine inventory searches are recognized exceptions to the warrant requirement.[11] The inventory search is a recognized exception because, unlike a probable cause search and a search incident to arrest, the purpose of an inventory search is not to discover evidence of a crime, but to perform an administrative or caretaking function. Knowledge of the precise nature of the property protects against claims of theft, vandalism, or negligence.[12]

Inventory searches are regularly upheld when they are conducted according to standardized police procedures which do not give excessive discretion to the police officers, and when they serve a purpose other than discovering evidence of criminal activity.[13] But an inventory search may not be unlimited in scope.[14] The permitted extent of such searches must be restricted to effectuating the pur-

---

[9] See People v. Lyda, 27 Ill. App. 3d 906, 327 N.E.2d 494 (1975) (defendant's jacket which the officers saw him take off and place on guard rail beside him just before his arrest properly seized and taken to station and searched there).

[10] Katz, 389 U.S. at 357; State v. Smith, 76 Wn. App. 9, 13, 882 P.2d 190 (1994).

[11] Illinois v. Lafayette, 462 U.S. 640, 643, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983); Colorado v. Bertine, 479 U.S. 367, 372, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987).

[12] Bertine, 479 U.S. at 373; see also State v. Garcia, 35 Wn. App. 174, 665 P.2d 1381 (1983).

[13] Bertine, 479 U.S. at 375-76.

[14] State v. Houser, 95 Wn.2d 143, 154, 622 P.2d 1218 (1980).

poses that justify their exception to the Fourth Amendment.[15]

In *State v. Houser*,[16] the supreme court considered whether a search of a piece of luggage found in the trunk of an automobile during the course of an inventory search was reasonable. It stated that the court must balance " 'the governmental and societal interests advanced to justify such intrusions against the constitutionally protected interest of the individual citizen in the privacy of his effects.' "[17] The *Houser* court held that where a closed piece of luggage in a vehicle gives no indication of dangerous contents, an officer cannot search the contents of the luggage in the course of an inventory search unless the owner consents. "Absent exigent circumstances, a legitimate inventory search only calls for noting such an item as a sealed unit."[18]

In reaching its decision, the court in *Houser* relied on *People v. Counterman*.[19] In that case, the court held that police had exceeded the proper scope of an inventory search in opening and searching the contents of a knapsack. The court noted that the contents were securely sealed and did not give any indication of danger or other reasons for special inventory. They concluded that the legitimate purposes of the inventory search could have been fully accomplished by noting the knapsack as a sealed unit, and by offering the defendant a choice of a full inventory of the contents. Because the knapsack was tightly sealed and there was no danger of anything slipping out, the court noted that the purposes of the inventory search are better served if the knapsack is inventoried as a unit.[20] " 'In this way the knapsack which is locked up as a whole in police

---

[15] *United States v. Edwards*, 577 F.2d 883, 894 (5th Cir. 1978).

[16] 95 Wn.2d 143, 622 P.2d 1218 (1980).

[17] *Houser*, 95 Wn.2d at 157 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 378, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976) (Powell, J., concurring)); *United States v. Bloomfield*, 594 F.2d 1200, 1203 (8th Cir. 1979).

[18] *Houser*, 95 Wn.2d at 158.

[19] 192 Colo. 152, 556 P.2d 481 (1976).

[20] *Counterman*, 556 P.2d at 485.

headquarters, has never been opened and its contents have never been removed, reshuffled and replaced.' "[21] The court concluded that " 'this would minimize the possibility of loss and the possibility of false claims against police by the owner.' "[22]

This appeal does not involve the inventory search of a vehicle, but the cases discussed above lead us to a similar conclusion—the purposes of an inventory search do not justify opening a closed container located inside a jacket pocket when there is no indication of dangerous contents. The search of the jacket was conducted in the field, outside the presence of Dugas or other witnesses. Opening a closed container found in the jacket was not a step necessary or reasonable to guard against a false property loss claim. The officers testified that their standard procedure for an inventory search included a search for illegal drugs, a purpose outside the scope of a valid inventory search.

Balancing the legitimate needs of the police against the right to be free of warrantless intrusions into one's personal effects, we conclude that it was unreasonable to search inside the closed container.

Reversed and remanded.

GROSSE and WEBSTER, JJ., concur.

---

[21] *Houser*, 95 Wn.2d at 159 (quoting *United States v. Bloomfield*, 594 F.2d 1200, 1202 (8th Cir. 1979).

[22] *Houser*, 95 Wn.2d at 159 (quoting *Bloomfield*, 594 F.2d at 1202).