# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70839-2-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| STEPHEN LEE VANNESS, | ) | |
| Appellant. | ) | FILED: March 2, 2015 |
| | ) | |

LEACH, J. — Stephen Lee VanNess appeals his conviction for possession of heroin and possession of methamphetamine with intent to deliver. He claims that a postarrest search of a locked box police found in his backpack violated the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution. Because the State does not show that this search meets any exception to the warrant requirements of these provisions, the search violated the state and federal constitutions. The police based a later request for a warrant to search the box solely on observations from this unconstitutional search. Thus, the controlled substances the State found when executing the warrant must be suppressed as fruits of the poisonous tree. Therefore, we do not reach the issues VanNess raises in his statement of additional grounds. We reverse and remand for proceedings consistent with this opinion.

FACTS

On November 29, 2012, the Everett Police Department received a citizen report about seeing Stephen Lee VanNess. The dispatcher informed responding Officer Robert Edmonds that VanNess had warrants out for his arrest. Edmonds obtained a physical description, made contact with VanNess, and arrested him. When arrested, VanNess was wearing a backpack and carrying a bag. Edmonds removed the backpack. A second officer arrived. Edmonds handcuffed VanNess, walked him and his bags to the patrol car, and placed the backpack on top of the car trunk. A third officer arrived.

Edmonds asked VanNess for permission to search the backpack. VanNess did not respond. Everett Police Department had a policy requiring officers to search backpacks for dangerous items, adopted after an officer had failed to search a backpack and, after transporting it to the police station, discovered a pipe bomb inside. Following that policy, Edmonds searched VanNess's backpack. During the search, at least one officer stood near VanNess next to the right rear passenger door of Edmonds's patrol car. Edmonds found three knives attached to the exterior of the backpack and another inside. Edmonds then arrested VanNess for possessing these knives because their blade length made them dangerous weapons under the Everett Municipal Code.

In VanNess's backpack Edmonds also found a box measuring six inches by four inches by two inches, locked with a three-number combination lock. Edmonds asked VanNess if he could search the locked box. Again, VanNess did not respond. When Edmonds asked if the box contained anything dangerous, VanNess continued his silence. In an earlier case, Officer Edmonds executed a warrant to search a vehicle and discovered a box of similar size that contained a dangerous handgun. Edmonds used a flathead screwdriver to pry open the box one-quarter to one-half inch. He looked inside and did not see any dangerous item but saw evidence of controlled substances. In his later affidavit of probable cause, he stated that he saw a scale and small plastic "baggies" and smelled vinegar, which he associated with heroin. Edmonds stopped his search, returned the box to the backpack, and sealed the backpack. He delivered it to the Everett Police Department's property room.

Edmonds applied for and received a warrant to search the box. When he searched the box, he found suspected methamphetamine and heroin, a digital scale, a glass pipe, and several plastic baggies. The State charged VanNess with possession of heroin with intent to deliver and possession of methamphetamine with intent to deliver.

The trial court denied VanNess's motion to suppress evidence of the box contents, concluding that Edmonds lawfully searched the backpack and the

locked box incident to VanNess's arrest. The court noted its concern for officer safety and reasoned that because officers found knives outside and in the backpack, the box could have also contained dangerous materials. The court ruled that officers conducted a proper inventory search of VanNess's backpack but ruled that the inventory search exception did not justify a warrantless search of the locked box. It then found that the items discovered in the box during the search incident to arrest established probable cause to obtain a warrant.

At trial, the court admitted the evidence the police found in the locked box. A jury found VanNess guilty of possession of heroin and guilty of possession of methamphetamine with intent to deliver. VanNess appeals.

## STANDARD OF REVIEW

A Washington court must presume that a warrantless search violates both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution.[1] The State carries the heavy burden to prove that a narrowly drawn exception to the warrant requirement applies to make the search lawful.[2] We review de novo a trial court's conclusions of law about a suppression request.[3]

---

[1] State v. Kirwin, 165 Wn.2d 818, 824, 203 P.3d 1044 (2009).
[2] Kirwin, 165 Wn.2d at 824.
[3] State v. Hinton, 179 Wn.2d 862, 867, 319 P.3d 9 (2014) (citing State v. Schultz, 170 Wn.2d 746, 753, 248 P.3d 484 (2011)); State v. Brock, 182 Wn. App. 680, 685, 330 P.3d 236 (2014), review granted, No. 90751-0 (Wash. Jan. 7, 2015).

-4-

This court also reviews de novo a trial court's assessment of a magistrate's probable cause determination when issuing a search warrant.[4] When an investigating officer properly applies for a warrant and a magistrate determines probable cause exists, on appeal we resolve all doubts in favor of a warrant's validity.[5] But "[w]hen an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree.[6] If unconstitutionally obtained information provides the only basis for a warrant, the court must suppress evidence seized under the warrant.[7]

## ANALYSIS

VanNess contends that Edmonds's warrantless search of the locked box violated both the Fourth Amendment and article I, section 7. The State asserts that the search incident to arrest and inventory exceptions to the constitutional warrant requirements validate this search. We agree with VanNess.

The Fourth Amendment protects people from unreasonable searches and seizures.[8] Article I, section 7 of the Washington Constitution further narrows the State's authority to search.[9] It ensures that "[n]o person shall be disturbed in his

---

[4] State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008).
[5] State v. Lyons, 174 Wn.2d 354, 360, 275 P.3d 314 (2012); State v. Fisher, 96 Wn.2d 962, 964, 639 P.2d 743 (1982).
[6] State v. Ladson, 138 Wn.2d 343, 359, 979 P.2d 833 (1999).
[7] State v. Young, 123 Wn.2d 173, 196, 867 P.2d 593 (1994).
[8] U.S. CONST. amend. IV.
[9] State v. Valdez, 167 Wn.2d 761, 772, 224 P.3d 751 (2009) (citing York v. Wahkiakum Sch. Dist. No. 200, 163 Wn.2d 297, 305-06, 178 P.3d 995 (2008)).

private affairs, or his home invaded, without authority of law."[10] Because our state constitution provides greater protection of individual privacy, when presented with arguments under the state and federal constitutions, Washington courts first examine the state argument.[11] We determine if the challenged state act involved a disturbance of private affairs and then ask whether the law justifies the intrusion.[12]

A warrantless search is per se unreasonable, unless the State can prove a "carefully drawn and jealously guarded exception[ ]" applies.[13] These exceptions include a search incident to arrest[14] and an inventory search.[15] If an exception does not apply, a warrantless search is illegal and the exclusionary rule prevents the State from presenting the illegally seized evidence.[16]

We first consider if the search incident to arrest exception validates Edmonds's warrantless search of the locked box. VanNess does not challenge

---

[10] WASH. CONST. art. I, § 7.
[11] State v. MacDicken, 179 Wn.2d 936, 940, 319 P.3d 31 (2014).
[12] York, 163 Wn.2d at 306.
[13] State v. Byrd, 178 Wn.2d 611, 616, 310 P.3d 793 (2013) (quoting State v. Bravo Ortega, 177 Wn.2d 116, 122, 297 P.3d 57 (2013)).
[14] United States v. Robinson, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); Chimel v. California, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); Arizona v. Gant, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009); Byrd, 178 Wn.2d at 617.
[15] State v. Tyler, 177 Wn.2d 690, 302 P.3d 165 (2013); South Dakota v. Opperman, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976).
[16] State v. Eserjose, 171 Wn.2d 907, 913, 259 P.3d 172 (2011).

the lawfulness of his arrest. Citing State v. Byrd,[17] the State contends that this lawful arrest provided it with the authority to search both the backpack and the locked box without any further justification because a valid custodial arrest justifies the search of all objects found on the arrested person. While Byrd provides some support for the State's position, that case did not involve a locked container. Additionally, the Supreme Court's subsequent decision in Riley v. California[18] significantly narrowed the primary authority cited in Byrd for the scope of a warrantless search incident to arrest.

In Byrd, decided in 2013, the Washington Supreme Court considered the validity of a warrantless search of Byrd's purse, seized from her lap and set on the ground by the police when arresting Byrd.[19] Following the categorical rule announced in United States v. Robinson,[20] the court held that the lawful arrest of Byrd justified the search of her person and all objects on or closely associated with her person at the time of her arrest, including her purse.[21] The court expressly rejected any need to further justify this search by concerns for officer safety or evidence preservation concerns.[22]

---

[17] 178 Wn.2d 611, 310 P.3d 793 (2013).
[18] ___ U.S. ___, 134 S. Ct. 2473, 2484, 189 L. Ed. 2d 430 (2014).
[19] Byrd, 178 Wn.2d at 617-25; Robinson, 414 U.S. at 235.
[20] 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973).
[21] Byrd, 178 Wn.2d at 625.
[22] Byrd, 178 Wn.2d at 625.

In Riley, decided in 2014, the Supreme Court narrowed the search incident to arrest exception, holding that police generally may not search the digital information on a cell phone seized from a person at the time of arrest.[23] The Court noted the long and checkered history of this exception.[24] It began its analysis by stating the following guiding principle:

> Absent more precise guidance from the founding era, we generally determine whether to exempt a given type of search from the warrant requirement "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."[25]

It then looked at its earlier application of the underlying reasons for a warrantless search incident to arrest by reviewing three related precedents that set forth the rules for this search. The Court described the first, Chimel v. California,[26] as laying the groundwork for most existing search incident to arrest doctrine.[27] It noted that Chimel provided this rule for assessing the reasonableness of a search incident to arrest:

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered,

---

[23] Riley, 134 S. Ct. at 2484-85.
[24] Riley, 134 S. Ct. at 2482-83.
[25] Riley, 134 S. Ct. at 2484 (quoting Wyoming v. Houghton, 526 U.S. 295, 300, 119 S. Ct. 1297, 143 L. Ed .2d 408 (1999)).
[26] 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969).
[27] Riley, 134 S. Ct. at 2483.

and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."[28]

The Court next summarized Robinson, which it said applied the Chimel analysis to a search of an arrestee's person and adopted the rule that a search of the person incident to a custodial arrest based upon probable cause requires no additional justification.[29] It noted that the underlying basis for this search remained the need to disarm and to discover evidence but untethered the reasonableness of this search from the specific facts of each case.[30]

Finally, the Court summarized Arizona v. Gant,[31] which it said recognized that "the Chimel concerns for officer safety and evidence preservation underlie the search incident to arrest exception" in the context of analyzing a search of an arrestee's vehicle.[32]

The Riley Court acknowledged that a mechanical application of Robinson's categorical rule might support the warrantless searches at issue but rejected this approach.[33] It distinguished the search of cell phone data from that

---

[28] Riley, 134 S. Ct. at 2483 (alteration in original) (quoting Chimel, 395 U.S. at 762-63).
[29] Riley, 134 S. Ct. at 2483.
[30] Riley, 134 S. Ct. at 2483.
[31] 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).
[32] Riley, 134 S. Ct. at 2484.
[33] Riley, 134 S. Ct. at 2484.

of physical objects found on a person, such as the cigarette pack in <u>Robinson</u>, and declined to extend <u>Robinson</u>. It concluded that "[a] search of the information on a cell phone bears little resemblance to the type of brief physical search considered in <u>Robinson</u>."[34] The <u>Riley</u> Court observed, "A conclusion that inspecting the contents of an arrestee's pockets works no substantial additional intrusion on privacy beyond the arrest itself may make sense as applied to physical items, but any extension of that reasoning to digital data has to rest on its own bottom."[35]

The <u>Riley</u> Court did not apply the "'case-by-case adjudication'" that <u>Robinson</u> rejected.[36] Instead, it considered if application of the search incident to arrest doctrine to cell phone digital content searches would "'untether the rule from the justifications underlying the <u>Chimel</u> exception.'"[37] It did so by examining the <u>Chimel</u> concerns of harm to officers and destruction of evidence and did not find them to be prevalent in the cell phone context.[38]

The <u>Riley</u> Court then examined an arrestee's privacy interests in cell phone content. It recognized both a quantitative and qualitative difference between cell phones and other physical objects that might be found on an

---

[34] <u>Riley</u>, 134 S. Ct. at 2485.
[35] <u>Riley</u>, 134 S. Ct. at 2489.
[36] <u>Riley</u>, 134 S. Ct. at 2485.
[37] <u>Riley</u>, 134 S. Ct. at 2485 (quoting <u>Gant</u>, 556 U.S. at 343).
[38] <u>Riley</u>, 134 S. Ct. at 2485-87.

arrestee's person.[39] While <u>Riley</u> distinguishes cell phone data from physical objects associated with one's person, it also suggests that <u>Robinson</u> does not permit an unlimited search of items on an arrestee's person when an arrestee has a significant privacy interest in the item to be searched.[40] Physical items such as wallets and purses do not hold a significant privacy interest.[41] But "when 'privacy-related concerns are weighty enough' a 'search may require a warrant, notwithstanding the diminished expectations of privacy of the arrestee.'"[42]

After <u>Riley</u>, a lawful arrest no longer provides categorical justification to search, without a warrant, all items found on an arrested person at the time of arrest. Instead, if the item to be searched falls within a category that implicates an arrestee's significant privacy interests, the court must balance the government interests against those individual privacy interests. Only when government interests in officer safety and evidence preservation exceed an arrestee's privacy interest in the category of item to be searched may it be searched incident to arrest without a warrant.[43]

---

[39] <u>Riley</u>, 134 S. Ct. at 2489.
[40] See <u>Riley</u>, 134 S. Ct. at 2484.
[41] <u>Riley</u>, 134 S. Ct. at 2488.
[42] <u>Riley</u>, 134 S. Ct. at 2488 (quoting <u>Maryland v. King</u>, ___ U.S.___, 133 S. Ct. 1958, 1979, 186 L. Ed. 2d 1 (2013)).
[43] <u>Riley</u>, 134 S. Ct. at 2484.

The Washington Supreme Court has stated that this balancing of interests is not appropriate under article I, section 7.[44] However, in the context of a locked container, it has twice "considered the underlying rationale of the search incident to arrest exception—the danger that an individual may secure a weapon or conceal or destroy evidence of the crime of arrest."[45] In each case, "[t]he court held that locked containers did not raise either concern because '[t]he individual would have to spend time unlocking the container, during which time the officers have an opportunity to prevent the individual's access to the contents of the container.'"[46]

While State v. Stroud[47] and State v. Valdez[48] each involved a locked container found in an automobile, the court's consideration of the Chimel concerns applies just as well to the facts of our case:

> Where a container is locked and officers have the opportunity to prevent the individual's access to the contents of that container so that officer safety or the preservation of evidence of the crime of arrest is not at risk, there is no justification under the search incident to arrest exception to permit a warrantless search of the locked container.[49]

---

[44] Valdez, 167 Wn.2d at 775-76.

[45] Valdez, 167 Wn. 2d at 776.

[46] Valdez, 167 Wn.2d at 776 (quoting State v. Stroud, 106 Wn.2d 144, 152, 720 P.2d 436 (1986), overruled on other grounds by Valdez, 167 Wn.2d at 776-77).

[47] 106 Wn. 2d 144, 720 P.2d 436 (1986).

[48] 167 Wn.2d 761, 224 P.3d 751 (2009).

[49] Valdez, 167 Wn.2d at 776-77.

The State argues that Byrd and State v. MacDicken[50] preclude an analogy to vehicle searches because search of a vehicle "encompasses a separate and analytically distinct concept permitting search of the area within the immediate control of the arrestee." However, Riley's rejection of the categorical rule announced in Robinson and its reliance upon an analysis of the Chimel concerns preclude the State's reliance upon the analytical differences between searches of vehicles and of objects found on the arrestee's person. We must consider, and the State does not address, the Washington Supreme Court's determination that the justification for a search incident to arrest does not apply to locked containers separated from the arrestee's person.

At the time of VanNess's arrest, the arresting officers removed his backpack, which contained the locked box. Officer Edmonds then handcuffed VanNess and walked him and the backpack to the patrol car. Officer Edmonds put the backpack on the trunk of his patrol car while VanNess stood next to the right passenger side of the car with another officer present. VanNess no longer had access to the contents of his backpack. In addition, a combination lock separated VanNess from the locked box's contents.

While Officer Edmonds found knives on and inside the backpack, in his affidavit of probable cause he did not rely on their presence near the locked box

---

[50] 179 Wn.2d 936, 319 P.3d 31 (2014).

to justify his opening of the box. Officer Edmonds did not raise a concern for his own immediate safety as a reason to search the box. Instead, he referenced his previous experience opening a similar box when executing a warrant and finding a loaded handgun. The State does not explain why Officer Edmonds waited for a warrant then but could not have waited for a warrant here.

Since Officer Edmonds arrested VanNess on outstanding warrants, the State cannot show that Officer Edmonds reasonably believed evidence relevant to the crime of arrest would be found in the locked box.[51]

We next consider the State's assertion that the inventory search exception to the warrant requirement justified the search of the locked box.[52] Officers may conduct a warrantless inventory search without violating section I, article 7 or the Fourth Amendment.[53] Unlike a probable cause search and search incident to arrest, officers conducting an inventory search perform an administrative or caretaking function.[54]

---

[51] Valdez, 167 Wn.2d at 778.

[52] VanNess assigns error to the court's conclusion that the inventory search exception justified the search of his backpack. VanNess does not support this contention with citation to authority or reference to the record, required for this court's proper review of the issue. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Further, VanNess admits the constitutionality of the search of his backpack as incident to arrest, resolving the issue.

[53] Tyler, 177 Wn.2d at 701; Colorado v. Bertine, 479 U.S. 367, 371, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987).

[54] State v. Smith, 76 Wn. App. 9, 13, 882 P.2d 190 (1994).

Officers may conduct a warrantless inventory search (1) to protect the arrestee's property, (2) to protect the government from false claims of theft, and (3) to protect police officers and the public from potential danger.[55] Courts generally uphold inventory searches conducted according to standardized procedures which do not afford police officers excessive discretion and when they serve a purpose other than discovery of evidence.[56]

But an officer's compliance with an established police procedure does not constitutionalize an illegal search.[57] Also, Washington courts have applied stricter rules to an inventory search of a locked container. For example, absent a showing of manifest necessity, article I, section 7 prohibits an inventory search of a locked vehicle trunk.[58]

The State claims that the inventory search exception applies to Officer Edmonds's search of VanNess's locked box because he searched it to protect officer safety when transporting goods to the police station. VanNess responds that the State could not prove the manifest necessity needed to justify the search of a locked container.

---

[55] Tyler, 177 Wn.2d at 701; South Dakota v. Opperman, 428 U.S. 364, 369, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976).
[56] Smith, 76 Wn. App. at 13-14 (citing Bertine, 479 U.S. at 375-76).
[57] State v. White, 135 Wn.2d 761, 771, 958 P.2d 982 (1998).
[58] White, 135 Wn.2d at 771.

At the CrR 3.6 suppression hearing, Officer Edmonds did not identify any evidence that the locked box contained any dangerous item or otherwise presented a safety issue. His use of a screwdriver to pry the box open in the immediate presence of others undermined the State's effort at the hearing to suggest that he opened the box to check for a possible bomb or hair-trigger firearm. In State v. Houser,[59] the court rejected a claim that the possibility of theft from the locked trunk of an impounded vehicle established the manifest necessity needed to justify an inventory search of the trunk. Similarly, we reject the State's claim, without any supporting evidence, that the possibility of a bomb or dangerous firearm in the locked box established manifest necessity to search the box. "Absent exigent circumstances, a legitimate inventory search only calls for noting such an item as a sealed unit."[60]

The State next argues that it does not need to show manifest necessity to search the locked box. It reasons that unlike the contents of a locked vehicle trunk, an arrestee has "a diminished expectation of privacy in the clothing and personal possessions closely associated with an arrested person." To support this argument, the State cites State v. Smith,[61] where a police officer went through each item of the arrestee's purse according to an inventory search

---

[59] 95 Wn.2d 143, 155-56, 622 P.2d 1218 (1980).
[60] Houser, 95 Wn.2d at 158.
[61] 76 Wn. App. 9, 11, 15, 882 P.2d 190 (1994).

-16-

policy. But Smith does not support the State's position. Though the court concluded that the inventory search of Smith's purse was valid, it did not make any distinction between a search of a vehicle trunk and items found on the arrestee's person. Instead, it found that the challenged search did not exceed the limits of an inventory search stated in Houser, a case that adopted the manifest necessity standard.[62]

Also, the State's position conflicts with our decision in State v. Dugas.[63] There, this court applied Houser to an inventory search of a closed container found in an arrestee's jacket and concluded that the search was unreasonable.[64] The State offers no persuasive distinction between this case and Dugas.

We conclude that neither the search incident to arrest nor the inventory search exception applies to the officer's initial search of VanNess's locked box. Therefore, the officer unconstitutionally searched the locked box.

VanNess claims that Officer Edmonds obtained a search warrant based on probable cause supported solely by this unconstitutional search of the locked box. Therefore the court must suppress the resulting evidence as fruit of the poisonous tree. We agree.

---

[62] Smith, 76 Wn. App. at 16.
[63] 109 Wn. App 592, 36 P.3d 577 (2001).
[64] Dugas, 109 Wn. App. at 597.

A search warrant may be issued only upon a magistrate's determination of probable cause.[65] "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched."[66]

Edmonds requested a search warrant based on the baggies and digital scale he saw in the locked box and the heroin-like odor of vinegar coming from it. But because Edmonds obtained this evidence as a result of an illegal, warrantless search, it cannot provide the basis for a warrant.

If an affidavit contains facts sufficient to establish probable cause independent of illegally obtained information also in the affidavit, a court will not invalidate the warrant.[67] Here, the record does not reveal, nor does the State assert, that Edmonds provided additional facts that would otherwise establish probable cause. Under the exclusionary rule, the trial court should have excluded the controlled substances and additional paraphernalia Edmonds found in the locked box.

Because of our resolution of the search and seizure issue in VanNess's favor, we need not consider VanNess's statement of additional grounds.

---

[65] Neth, 165 Wn.2d at 182.
[66] State v. Thein, 138 Wn.2d 133, 140, 977 P.2d 582 (1999).
[67] State v. Maxwell, 114 Wn.2d 761, 769, 791 P.2d 223 (1990).

CONCLUSION

Because the State does not show that the search of VanNess's locked box satisfied any exception to the constitutional warrant requirements, we hold that Edmonds unconstitutionally searched VanNess's locked box. We also hold that the trial court should have suppressed the evidence obtained from this search and the evidence obtained under the subsequent warrant. We reverse and remand for further proceedings consistent with this opinion.

_Leach, J._

WE CONCUR:

_Schindler, J._      _Appelwick, J._