IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73036-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| K.C.-S., | ) | |
| | ) | |
| Appellant. | ) | FILED: January 19, 2016 |

SCHINDLER, J. — Police executing a search warrant found two firearms in a car driven by K.C.-S. The State charged K.C.-S. as a juvenile with unlawful possession of a firearm. K.C.-S. moved to suppress the firearms on the ground that probable cause did not support the search warrant. The juvenile court denied the motion and found K.C.-S. guilty as charged. K.C.-S. appeals, arguing the juvenile court erred in denying his motion to suppress. We affirm.

FACTS

The juvenile court's CrR 3.6 findings are largely unchallenged and establish the following facts.

On August 1, 2014, Detective Joseph Eshom and Deputy Aaron Thompson of the King County Sheriff's Office (KCSO) were patrolling Renton Avenue South in an unmarked van when they observed a green Lexus with three occupants. Detective

Eshom ran the Lexus license plate number and learned the car was registered to K.C.-S.'s mother. The detective recognized the Lexus from a recent vehicle pursuit that ended with the arrest of the Lexus driver, K.C.-S.

Detective Eshom and Deputy Thompson watched as the Lexus pulled into a mini-mart parking lot. Detective Eshom recognized the Lexus driver as K.C.-S. K.C.-S. got out of the Lexus and spoke with someone in another Lexus for about 30 seconds. Detective Eshom suspected a narcotics transaction.

A warrant check revealed K.C.-S. had three outstanding arrest warrants, including one for violation of the uniform controlled substances act (VUCSA).[1] Before the officers could stop K.C.-S., he got in the Lexus, pulled out of the parking lot, and drove off.

The officers followed the Lexus to a nearby fourplex. As the Lexus pulled into the driveway, the officers activated their emergency lights. All the windows in the Lexus were open. The officers could see K.C.-S. lift up his body off the seat, reach in his waistband, and then bend forward toward the floorboard. Moments later, K.C.-S. swung open the driver's door and jumped out of the car. His two passengers also attempted to leave. Detective Eshom drew his gun and ordered the passengers back into the car. Deputy Thompson drew his gun and ordered K.C.-S. to get on the ground.

Deputy Thompson immediately handcuffed K.C.-S. and asked for his name. K.C.-S. said, "[T]here is nothing in my car." Detective Eshom walked over, identified K.C.-S., and confirmed he had outstanding warrants. The officers then placed K.C.-S.

---

[1] Chapter 69.50 RCW.

under arrest. In a search incident to arrest, the officers found a small baggie of marijuana in his pants pocket.

The officers removed the other passengers from the Lexus. The passengers were over the age of 21. The officers smelled a strong odor of fresh unsmoked marijuana coming from inside the vehicle even though its windows had been open and the occupants had been removed. Believing there could be drugs or weapons in the vehicle, particularly under the driver's seat, the officers asked K.C.-S. for permission to search the Lexus. He denied the request.

The officers impounded the Lexus and applied for a search warrant. After towing the Lexus to a precinct parking lot, a K9 unit and a drug-sniffing dog walked around the Lexus. The dog indicated there were controlled substances in the car.

Detective Eshom prepared a search warrant affidavit and requested permission to search the Lexus for narcotics and firearms. The court issued a warrant to search for drugs but concluded the affidavit did not establish probable cause to search for firearms.

In the search of the Lexus, the police found two firearms—one between the driver's seat and center console and one on the rear passenger floorboard. Detective Eshom obtained a warrant addendum authorizing the seizure of any weapons or ammunition. Deputy Thompson then removed the handguns discovered in the initial search.

The State charged K.C.-S. with second degree unlawful possession of a firearm. The defense moved to suppress the firearms, arguing in part that the initial search

warrant was not supported by probable cause. In denying the motion, the court found

probable cause based on the following written findings of fact:

    a.    Deputies were familiar both with the car as well as the driver
    b.    The questionable activity in the mini-mart suspected as a drug deal
    c.    The respondent's furtive movements prior to his arrest
    d.    The respondent's outstanding felony warrants
    e.    Strong smell of marijuana coming from the vehicle
    f.    Possession of marijuana by the respondent.
    g.    The Respondent's statement that he had nothing in his car.

In addition to the above-mentioned factors, probable cause to search the respondent's vehicle was enhanced by K-9 Jade's positive reaction to the presence of narcotics.

. . . .

The Court finds . . . Detective Eshom, Detective Hamill, and Deputy Thompson to be credible.[2]

The written findings expressly incorporate the court's oral decision. The oral

decision addressed whether the marijuana found on K.C.-S. was the product of a

search incident to arrest.

THE COURT: [Respondent's counsel], I have that there was no Miranda[3] given; that [Deputy] Thompson was trying to confirm the respondent's identification. He asked his name again. The respondent said Lionel Barry; that [Detective] Eshom confirmed his identification as [K.C.-S.]
At that point he was stood up and searched and there was a small baggie of marijuana taken from him and placed into evidence.
Is that your understanding of the chronology?
[RESPONDENT'S COUNSEL]: That is — seems to be my recollection of the testimony — very similar.
THE COURT: I am going to find that the — based upon both the testimony of Deputy Thompson, Detective Eshom <u>and Detective Eshom's affidavit</u> in support of search warrant — that the search of [K.C.-S.] was incident to his arrest for the warrants and therefore could be considered by the judge in issuance of the search warrant.

---

[2] Paragraph numbers omitted.
[3] <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

As such there were grounds for believing that there may be a VUCSA violation.

. . . .

THE COURT: And therefore the search [of K.C.-S.'s person] was lawful.[4]

The parties stipulated K.C.-S. had a prior felony conviction and notice that he was ineligible to possess or control a firearm. The juvenile court found K.C.-S. guilty as charged. K.C.-S. appeals.

## ANALYSIS

K.C.-S. contends the warrant authorizing the search of the Lexus for controlled substances was not supported by probable cause. K.C.-S. contends that in the absence of probable cause, the warrant was invalid and the firearms must be suppressed. We conclude the warrant was supported by probable cause.

A search warrant may be issued only upon a magistrate's determination of probable cause. State v. VanNess, 186 Wn. App. 148, 165, 344 P.3d 713 (2015).

> "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched."

VanNess, 186 Wn. App. at 165 (quoting State v. Thein, 138 Wn.2d 133, 140, 977 P.2d 582 (1999)). Probable cause requires a nexus between criminal activity and the item to be seized, and a nexus between the item to be seized and the place to be searched. Thein, 138 Wn.2d at 140. The warrant affidavit "must be tested in a commonsense manner rather than hypertechnically," and doubts are resolved in favor of the warrant. State v. Partin, 88 Wn.2d 899, 904, 567 P.2d 1136 (1977). Although we defer to the

---

[4] Emphasis added.

5

magistrate's decision, the superior court's probable cause determination is a legal question we review de novo. State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). Evidence obtained from a warrant issued without probable cause must be suppressed under the fruit of the poisonous tree doctrine. State v. Eisfeldt, 163 Wn.2d 628, 640, 185 P.3d 580 (2008).

In this case, the warrant affidavit recites the training and experience of Detective Eshom and the training and experience of the canine unit with drug detection and trafficking. Detective Eshom states K.C.-S.'s brief contact with the other car in a parking lot was consistent with a drug transaction. A records check disclosed that K.C.-S. had three felony warrants, including warrants for VUCSA and unlawful possession of a firearm.

The affidavit states that when Deputy Thompson activated his emergency lights, K.C.-S. "looked over his shoulder," "appeared to be digging something from either his pockets or waistband," and "then leaned forward and was doing something with his hands towards his feet or under his driver[']s seat." At that point, K.C.-S. "s[a]t up and immediately flung his door open and quickly started to get out of the car." The affidavit also states:

> . . . Detective Thompson contacted [K.C.-S.] and ordered him to the ground. . . .
>
> [K.C.-S.] was placed under arrest for his warrant. KCSO data confirmed the warrants.
>
> The car had a heavy odor of marijuana coming from the vehicle. A small amount of marijuana was found in [K.C.-S.]'s pocket. [K.C.-S.] is 17 years old. Even after [K.C.-S.] was removed from the vehicle the vehicle still had a strong odor of fresh marijuana.

Detective Eshom states that before the officers impounded the car, "[n]umerous people . . . came to the scene and asked to have access to the car to get items out of it and seemed concerned about the contents of the vehicle." Finally, the affidavit describes the drug-sniffing dog "indicat[ing] the presence of narcotics on the trunk and all windows of the vehicle."

Viewed in a commonsense manner, the affidavit sets forth facts and circumstances to establish a reasonable inference that K.C.-S. was involved in criminal activity; specifically, VUCSA, and that evidence of a crime would be found in his car.

K.C.-S. challenges the basis for finding probable cause. Most of his arguments simply point out that the findings are not individually sufficient to establish probable cause. These arguments overlook the fact that probable cause is determined by the totality of the circumstances. State v. Graham, 130 Wn.2d 711, 724, 927 P.2d 227 (1996). Taken together, the findings of fact support the court's determination of probable cause.

Nonetheless, we address several of his arguments challenging the court's decision. K.C-S. assigns error to finding of fact 20 through 23. Those findings state that the search of K.C-S. occurred after police handcuffed and identified him and confirmed his warrants. K.C.-S. contends the juvenile court erroneously relied on the marijuana found in his pocket during the search because the record does not support the determination that the search was incident to his arrest. We disagree.

A custodial arrest occurs when an officer manifests intent to detain a suspect in custody and seizes him in such a manner as to cause a reasonable person in the same circumstances to believe he is "under a custodial arrest" and "not free to leave." State

v. Reichenbach, 153 Wn.2d 126, 135, 101 P.3d 80 (2004). Deputy Thompson testified that the search of K.C.-S. occurred after he was handcuffed and Detective Eshom had confirmed K.C.-S.'s identity and the warrants for his arrest. The juvenile court expressly found the detectives' testimony credible.

In addition, the juvenile court expressly relied on Detective Eshom's search warrant affidavit providing an implicit chronology of events. The affidavit indicates K.C.-S. was "placed under arrest for his warrant," followed by confirmation of the warrants, followed by the search of K.C.-S.'s person and discovery of the marijuana in his pocket. The officers also testified the search was "incident to" or "following" K.C.-S.'s arrest. The record contains substantial evidence supporting the court's finding. And even if we concluded otherwise, the remaining facts in the search warrant affidavit—the suspected drug deal, K.C.-S.'s furtive movements, the strong odor of fresh marijuana despite the car's open windows and the removal of its occupants, K.C.-S.'s outstanding VUCSA warrant, and the K9 sniff—support the finding of probable cause.

K.C.-S. also contends the State "established no nexus between K.C.-S.'s criminal history and the narcotics-related crime for which it sought a warrant." But the affidavit itself establishes a sufficient nexus, stating K.C.-S. had an outstanding warrant for VUCSA. K.C.-S. also contends the odor of marijuana did not provide probable cause because there were two adults in the car who could legally possess marijuana. This contention ignores substantial evidence linking K.C.-S. to the marijuana odor, including his drug transaction behavior before the arrest, furtive gestures, outstanding VUCSA warrant, and possession of marijuana.

8

Finally, K.C.-S. contends the "dog sniff adds nothing to the probable cause analysis" because "the dog could not differentiate between marijuana and other narcotics." While the dog-sniff evidence was not drug specific, it added to the evidence of probable criminal activity.

We conclude the juvenile court did not err in denying K.C.-S.'s motion to suppress, and affirm.

WE CONCUR:

Trickey, J