# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46169-2-II |
| Respondent, | |
| v. | |
| JASON RAY DUNHAM, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Jason Dunham appeals his conviction for unlawful possession of methamphetamine.  Dunham argues that a warrantless search of his backpack's locked pocket was unlawful and that the evidence obtained as a result should have been suppressed.  Because the search of the backpack was a valid inventory search, we disagree and affirm the conviction.

FACTS

On January 29, 2014, Sergeant Gwen Carrell of the Chehalis Police Department responded to a reported shoplifting at a local department store.  Upon arriving at the store, Sgt. Carrell met with loss prevention officers who advised Sgt. Carrell that Dunham had multiple knives in his backpack and that they had removed the backpack from Dunham's reach.  Sgt. Carrell placed Dunham in handcuffs for officer safety and searched him for weapons.  Sgt. Carrell located two more knives on Dunham's person.  Sgt. Carrell arrested Dunham for theft and decided to book him into jail.

Sgt. Carrell then searched Dunham's backpack for items to be logged into the jail's temporary storage. The front pocket of the backpack was locked with a luggage lock on the zippers. Sgt. Carrell located two knives in the unlocked portion of the backpack, one of which was unsheathed. Sgt. Carrell lightly touched the outside of the locked pocket and felt a hard object that resembled one of the knives she had already found inside the backpack. Sgt. Carrell noted that the object tapered at one end and that she believed it was a knife.

It is Chehalis Police Department's policy to inventory items to be held in its storage facility for any dangerous items. As part of this policy, knives are to be kept in secure containers, preventing them from puncturing anything. This policy was established several years ago after a sharp object pierced its container and cut an evidence custodian.

Sgt. Carrell used Dunham's keys to unlock the backpack pocket. Sgt. Carrell opened the pocket and observed a flashlight, a butane torch, and a glass pipe. What Sgt. Carrell thought was a knife was actually the butane torch. The residue in the glass pipe tested positive for methamphetamine.

The State charged Dunham with one count of possession of a controlled substance and one count of third degree theft. Dunham filed a motion to suppress the evidence found during Sgt. Carrell's search of the locked portion of his backpack pursuant to CrR 3.6, arguing that the search violated his constitutional rights. The trial court denied the motion, and entered findings of fact and conclusions of law determining that the inventory search was valid. Following the denial of his motion to suppress, Dunham waived his right to a jury trial and proceeded by way

of a trial on stipulated facts. The trial court found him guilty on both counts. Dunham appeals only his conviction for unlawful possession of a controlled substance.

ANALYSIS

Dunham argues that the warrantless search of his backpack's locked pocket violated the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution. He claims that the search was not a valid inventory search, and, therefore, the trial court erred by admitting evidence obtained from the search. We disagree.

We review the denial of a suppression motion to determine whether substantial evidence supports the trial court's findings of fact and whether those findings support the conclusions of law. *State v. Weller*, 185 Wn. App. 913, 922, 344 P.3d 695, *review denied*, 183 Wn.2d 1010 (2015). Substantial evidence is evidence sufficient to convince a fair-minded person that a finding is true. *State v. Hardgrove*, 154 Wn. App. 182, 185, 225 P.3d 357 (2010). We defer to the trier of fact on issues of "conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Dunham challenges only finding of fact 27: "Sgt. Carrell was afraid of being stabbed by the object inside the backpack, given the number of knives she had already found with Dunham." Clerk's Papers at 36. We treat the other, unchallenged, findings as verities on appeal. *State v. Chacon Arreola*, 176 Wn.2d 284, 288, 290 P.3d 983 (2012). Dunham also challenges the trial court's conclusion of law that the inventory search of the backpack's locked pocket was lawful. We review de novo the trial court's conclusions of law to determine if they are supported by the findings of fact. 176 Wn.2d at 291.

We presume that a warrantless search violates both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution. *State v. VanNess*, 186 Wn. App. 148, 154, 344 P.3d 713 (2015). The Fourth Amendment and article I, section 7 protects citizens from unreasonable government searches. 186 Wn. App. at 155. Because Washington's Constitution provides greater protection of individual privacy, when presented with arguments under both the Fourth Amendment and article I, section 7, Washington courts turn first to the State argument. 186 Wn. App. at 155.

Warrantless searches are per se unreasonable unless they fall within an exception to the warrant requirement. 186 Wn. App. at 155. If an exception does not apply, a warrantless search is illegal and the illegally seized evidence is excluded from a trial. 186 Wn. App. at 156. The State carries the burden of proving that a narrowly drawn exception to the warrant requirement applies to make the search lawful. 186 Wn. App. at 154. One such exception is the inventory search exception. 186 Wn. App. at 155.

The purpose of an inventory search is not to discover evidence of a crime, but to perform an administrative or caretaking function. 186 Wn. App. at 162. The principal purposes of an inventory search are to (1) protect the owner's property, (2) protect the police against false claims of theft by the owner, and (3) protect the police from potential danger. 186 Wn. App. at 162. The scope of an inventory search should be limited to those areas necessary to fulfill its purpose. *State v. Wisdom*, 187 Wn. App. 652, 674, 349 P.3d 953 (2015).

"Courts generally uphold inventory searches conducted according to standardized procedures that do not afford police officers excessive discretion and when they serve a purpose

4

other than discovery of evidence." *VanNess*, 186 Wn. App. at 162-63. However, an officer's compliance with an established procedure does not constitutionalize an otherwise illegal search. 186 Wn. App. at 163. Washington courts require a showing of manifest necessity to support an inventory search of a locked container in a vehicle or a locked vehicle trunk. *State v. Tyler*, 177 Wn.2d 690, 708, 302 P.3d 165 (2013); *State v. Ferguson*, 131 Wn. App. 694, 703, 128 P.3d 1271 (2006); *State v. Houser*, 95 Wn.2d 143, 156, 622 P.2d 1218 (1980).

Dunham argues that the State failed to prove a manifest necessity justifying the State's warrantless search of the locked portion of Dunham's backpack. The State suggests that objects that are inventoried but are not found inside an automobile receive different scrutiny than those found inside a vehicle. However, Division One of this court rejected a similar argument in *VanNess*. 186 Wn. App. at 164 (rejecting the argument that an arrestee has a diminished expectation of privacy in the clothing and personal possessions closely associated with an arrested person). We reject the State's argument that inventoried items outside of a vehicle receive less constitutional protection against warrantless searches, but we conclude that the officer's search of Dunham's backpack was a valid inventory search because the surrounding circumstances justified opening the locked portion of the backpack to protect officer safety.

In *VanNess*, an officer used a screwdriver to pry open a locked box found in VanNess's backpack. 186 Wn. App. at 153. The officer looked inside and did not see a dangerous item but saw evidence of controlled substances. 186 Wn. App. at 153. The officer stopped his search, returned the box to the backpack, sealed the backpack, and applied for and received a warrant to search the box. 186 Wn. App. at 153. The State argued that the initial search was a valid

inventory search done in the interest of protecting officer safety. 186 Wn. App. at 163. The court rejected the State's argument and held that absent any supporting evidence that the locked box contained any dangerous item or otherwise presented a safety issue, the search was invalid. 186 Wn. App. at 163-64.

Similarly in *State v. Dugas*, a police officer opened a closed container found inside Dugas's impounded jacket after Dugas had been arrested and transported to jail. 109 Wn. App. 592, 594, 36 P.3d 577 (2001). Dugas moved to suppress the evidence of cocaine found within the container on grounds that the warrantless search violated his constitutional right to privacy. 109 Wn. App. at 594-95. The officers testified that their routine procedure for an impound search was to record all impounded items, including items in jacket pockets, in order to avoid false claims and to discover drugs and any dangerous contents. 109 Wn. App. at 595. Division One of our court concluded that it was unreasonable for officers to search inside the closed container, and held that "the purposes of an inventory search do not justify opening a closed container located inside a jacket pocket when there is no indication of dangerous contents." 109 Wn. App. at 599.

Here, unlike *VanNess* and *Dugas*, Dunham's backpack presented a safety issue justifying a search of its locked pocket, and thus a manifest necessity existed. Sgt. Carrell had already found two knives on Dunham's person and two knives in the unlocked portion of his backpack, one of which was unsheathed. When Sgt. Carrell lightly touched the outside of the locked pocket, she felt a hard object that resembled one of the knives she had found inside the backpack. Sgt. Carrell believed that the object was another knife and was afraid it could pose a safety threat

to her or the employees at the evidence storage facility. Unlike *VanNess* and *Dugas*, Sgt. Carrell's safety concern about potentially exposed knives in the locked pocket was reasonable based on the facts that (1) several knives were found on Dunham's person, (2) additional knives were found in the unlocked portion of Dunham's backpack, (3) one of the knives found in the backpack was unsheathed, and (4) Sgt. Carrell felt what she believed to be another knife in the locked pocket of the backpack. Therefore, a manifest necessity existed for searching the locked portion of the backpack.

Additionally, unlike *Dugas*, Sgt. Carrell's search had nothing to do with procuring evidence. *See Dugas*, 109 Wn. App. at 599 (the standard procedure for an inventory search included a search for illegal drugs, which is a purpose outside the scope of a valid inventory search). Rather, the Chehalis Police Department's policy was to inventory items that would be held in their storage facility for any dangerous items. The policy specifically required that knives be kept in secure containers to prevent them from puncturing anything. The policy was instituted several years prior when a person in the evidence storage facility was cut by a sharp object piercing the item in which it was contained. Sgt. Carrell's search of the locked pocket was in accordance with an established policy in furtherance of officer safety, which is a purpose within the scope of a valid inventory search.

Substantial evidence supports the challenged finding of fact. Given the reasonable indication that the locked portion of the backpack contained dangerous items along with Sgt. Carrell's reasonable fear of being stabbed, we hold that a manifest necessity existed to search

inside the locked portion of the backpack. Therefore the trial court's findings of fact support its conclusion that the inventory search was valid. We affirm Dunham's conviction.

_____

Worswick, J.

We concur:

_____

Bjorgen, C.J.

_____

Maxa, J.