# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52681-6-II |
| Respondent, | |
| v. | |
| DANIELLE M. AYLWARD, a/k/a, DANIELLE M. MEADOWS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Danielle Aylward appeals her conviction for possession of a controlled substance, methamphetamine.[1]  Below, Aylward did not move to suppress evidence resulting from a search of her purse.  On appeal, Aylward argues that the search of her purse and pouch inside her purse was unconstitutional, and thus, constitutes manifest constitutional error.  Aylward also argues that her trial counsel provided ineffective assistance for failing to bring a motion to suppress evidence.  Finally, Aylward argues that the trial court erred by imposing certain legal financial obligations (LFOs), namely an interest accrual provision, court-appointed attorney fees, and a supervision assessment, because she was indigent and because the trial court failed to conduct an individualized inquiry into her ability to pay.

We hold that Aylward fails to show manifest constitutional error and that Aylward's trial counsel did not provide ineffective assistance.  We remand to the trial court to strike the interest accrual provision and to make a determination regarding Aylward's indigency before imposing

---

[1] RCW 69.50.4013.

court-appointed attorney fees. However, we hold that the trial court properly imposed the supervision assessment. Accordingly, we affirm Aylward's conviction and supervision assessment, but remand to the trial court regarding the interest accrual provision and court-appointed attorney fees.

## FACTS

The State charged Aylward with possession of a controlled substance, methamphetamine. The matter proceeded to a bench trial. Evidence at trial established that Aylward's purse was searched incident to arrest. In the purse was a gray pouch, and in the pouch was a straw that contained methamphetamine. The trial court did not make detailed findings regarding the search of the purse because Aylward did not file a CrR 3.6 motion.

During the trial, police officer Rodney Nawn testified that, following a traffic stop, he arrested Aylward for driving with a suspended license. He identified Aylward's purse as being "closely associated" with Aylward. Verbatim Report of Proceedings (VRP) (Aug. 23, 2018) at 38. He further testified that when he arrested Aylward, her purse was sitting in her lap, but that she placed it on the center console, which is where he retrieved it.

Officer Nawn searched Aylward's purse. Inside her purse was a gray zippered pouch. The gray pouch contained a straw with a white crystalline substance that later tested as methamphetamine.

After the State concluded its case in chief, Aylward moved to dismiss for insufficient evidence and "contest[ed] the legality of the search in this case." VRP (Aug. 23, 2018) at 61. The trial court denied Aylward's motion to dismiss and stated that CrR 3.6 required Aylward's

objection to the search to be a written motion to suppress, supported by an affidavit or document. Accordingly, the trial court did not address the validity of the search. [2]

Aylward testified in her own defense. Aylward denied that the pouch and straw belonged to her. However, Aylward did not deny that she was in possession of the pouch and straw. She stated that when she stopped for Officer Nawn, her purse was on the passenger side floorboard, but that she moved her purse onto her lap during her conversation with Officer Nawn. On cross-examination, however, Aylward testified that she did not remember putting her purse on her lap, but that she remembers it on the passenger floorboard and center console.

The trial court made findings of fact and conclusions of law. They state, in full:

<u>FINDINGS OF FACT</u>

Based on the evidence provided the Court hereby finds the following facts:

1. That on May 10, 2017 Officer Rodney Nawn of the Long Beach Police Department arrested the defendant for Driving on a Suspended License, in Pacific County, State of Washington.

2. The defendant was searched incident to arrest. As part of that search her purse was searched. In the purse was a gray pouch. (State's Exhibit 2). In the gray pouch was a white and clear straw. (State's Exhibit 1).

3. The straw had a white crystalline substance that the officer suspected to be Methamphetamine.

4. The straw was taken into evidence, sealed, and sent in to the Washington State Patrol Crime Lab.

5. Martin McDermot, chemist at the crime lab, tested the residue by accepted scientific means and determined the substance to be methamphetamine.

6. The Defendant testified that she did not know the pouch or straw was in her purse. The defendant and Officer Nawn were both credible. However, the court ultimately

---

[2] Aylward does not appeal the trial court's refusal to hear her motion regarding the search.

found her testimony did not establish the defense of unwitting possession by a preponderance of the evidence when considered with the other facts in evidence.

CONCLUSIONS OF LAW

1.  This Court has jurisdiction over this action, and venue is proper.

2.  The above facts establish beyond a reasonable doubt that the defendant, Danielle M. Meadows A/K/A Danielle M. Aylward, is guilty of Possession of a Controlled Substance, to wit: Methamphetamine as charged in count one.

3.  All findings of fact that are conclusions of law shall be treated as such, and all conclusions of law that are findings of fact shall be treated as such.

Clerk's Papers at 40-41.

During sentencing, the trial court stated:

DNA fee will be paid; court costs will be paid. The Defendant was indigent, as far as her attorney goes. She does have employment and earns an income, so she does have a limited ability to pay certain costs.

And I am going to require her to reimburse for attorney fees. I'm going to waive the mandatory drug fine, in light of her limited indigency. . . .

. . . The victim fee needs to be paid. . . .

. . . So, taking the Defendant's situation into account, . . . she has the ability to pay that amount through a payment schedule.

VRP (Aug. 23, 2018) at 90. The trial court did not question Aylward about her employment history, income, assets, financial resources, living expenses, or other debts. Moreover, the record on appeal does not reflect under which statutory definition Aylward was determined to be indigent. The trial court imposed LFOs, including a supervision assessment, court-appointed attorney fee, and an interest accrual provision. Aylward appeals her judgment and sentence.

4

ANALYSIS

I. SEARCH OF AYLWARD'S PURSE AND POUCH

Aylward argues for the first time on appeal that Officer Nawn's search of her purse was unconstitutional. Aylward cannot raise this issue because she fails to show manifest constitutional error.[3]

Aylward acknowledges that she is making this argument for the first time on appeal. A party generally may not raise an argument on appeal that the party did not make to the trial court. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). However, RAP 2.5(a)(3) permits review of an unpreserved claim of error if that error is a "manifest error affecting a constitutional right." To show the error is manifest, the defendant must show actual prejudice. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). Prejudice is shown when it is plausible that the claimed error had practical and identifiable consequences in the trial. *O'Hara*, 167 Wn.2d at 99. To determine whether the claimed error had practical and identifiable consequences, we first preview the merits of Aylward's constitutional argument to determine whether her claim is likely to succeed. *See State v. Kirwin*, 165 Wn.2d 818, 823, 203 P.3d 1044 (2009).

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, a law enforcement officer generally cannot search a person without

---

[3] Aylward also assigns error to finding of fact 2 and conclusion of law 2. However, Aylward does not address these assignments of error in her brief's argument section; therefore, we consider any argument waived. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

a warrant unless an exception applies. *State v. Byrd*, 178 Wn.2d 611, 616, 310 P.3d 793 (2013). A search incident to a lawful arrest is one such exception. *Byrd*, 178 Wn.2d at 616.

There are two analytically distinct types of searches encompassed by this exception. *Byrd*, 178 Wn.2d at 617. The first type of search is that made of the *surrounding area* within the control of the arrestee. *Byrd*, 178 Wn.2d at 617. This type of search must be justified by a concern that the arrestee could access an article to obtain a weapon or destroy evidence. *Byrd*, 178 Wn.2d at 617. The second type of search is that made of the *person* of the arrestee by virtue of the lawful arrest. *Byrd*, 178 Wn.2d at 617. This type of search may include personal effects immediately associated with the arrestee's person. *State v. Brock*, 184 Wn.2d 148, 154, 355 P.3d 1118 (2015).

Whether a personal effect constitutes part of an arrestee's person, as opposed to merely part of the surrounding area, is determined by the "time of arrest rule." *Brock*, 184 Wn.2d at 154. Under the "time of arrest rule," an article is immediately associated with the arrestee's person and may be searched if the arrestee has actual and exclusive possession of the item at or immediately preceding the time of a lawful custodial arrest. *Byrd*, 178 Wn.2d at 621. Personal effects are subject to search because officers, as custodians, must "secure those articles of clothing, purses, backpacks, and even luggage, that will travel with the arrestee into custody." *Brock*, 184 Wn.2d at 156.

The authority to search an arrestee's person and personal effects flows from the authority of a custodial arrest itself. *Byrd*, 178 Wn.2d at 618. This search presumes exigencies and is justified as part of the arrest. *State v. MacDicken*, 179 Wn.2d 936, 941, 319 P.3d 31 (2014). As a result, officer safety or evidence preservation justifications are unnecessary. *MacDicken*, 179

Wn.2d at 941. Because an officer takes custody of these personal effects at the time of arrest when he takes an arrestee into custody, our courts recognize the practical reality that an officer seizes these items during an arrest. *Brock*, 184 Wn.2d at 156. Based on that custodial authority, an officer has the authority to search for weapons, contraband, and destructible evidence. *Brock*, 184 Wn.2d at 156.

In *Byrd*, at the time of arrest, the defendant was sitting in a car's front passenger seat with her purse in her lap. 178 Wn.2d at 615. Before removing Byrd from the car, the officer seized the purse and set it on the ground nearby. *Byrd*, 178 Wn.2d at 615. The officer placed Byrd in a patrol car and returned to search the purse. *Byrd*, 178 Wn.2d at 615. The officer found drugs inside a sunglasses case in the purse. *Byrd*, 178 Wn.2d at 615. The trial court held that the officer's search was unlawful and granted Byrd's motion to suppress. *Byrd*, 178 Wn.2d at 615. Our Supreme Court cautioned that the proper scope of the time of arrest rule "does not extend to all articles in an arrestee's constructive possession, but only those personal articles in the arrestee's actual and exclusive possession at or immediately preceding the time of arrest." *Byrd*, 178 Wn.2d at 623. Nevertheless, observing that the purse "left Byrd's hands only after her arrest, when [the officer] momentarily set it aside," the Court held that the purse was "unquestionably an article 'immediately associated' with her person," and thus, the search of the purse was lawful. *Byrd*, 178 Wn.2d at 623-24.

Regarding the constitutionality of the search of Aylward's purse, Aylward appears to argue only regarding the first type of search incident to arrest, a search of the surrounding area of the arrestee. Aylward acknowledges that testimonies regarding the location of the purse differ. Officer Nawn testified that Aylward had the purse in her lap when he made contact with the

vehicle. Aylward offered inconsistent testimony. First, she stated that the purse was on the passenger floorboard and she moved the purse to her lap while speaking with Officer Nawn prior to her arrest. Then, Aylward testified that she moved her purse from the passenger floorboard to the center console, but did not remember placing her purse in her lap.

Conversely, the State argues that the search here fits into the second category of searches incident to arrest, a search of personal effects immediately associated with the arrestee's person. The State does not acknowledge Aylward's testimony regarding the location of the purse as on the passenger floorboards or center console. Instead, the State assumes as true that the purse was in Aylward's lap at the time of her arrest.

The trial court made no finding of fact relating to the exact location of the purse at the time of Aylward's arrest. According to the evidence at trial, the purse was either on Aylward's lap or Aylward moved the purse from the floorboard to the center console when Officer Nawn stopped her. Regardless of the exact location of Aylward's purse, Aylward's purse was in her actual possession and control when she moved it. Her purse was closely associated with her person at the time of arrest and, thus, Aylward's purse was subject to search without a warrant.

Aylward cites *Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014) and *State v. VanNess*, 186 Wn. App. 148, 344 P.3d 713 (2015), to argue that she had a significant privacy interest in her purse and the pouch, thus, the search was unconstitutional. These cases are distinguishable. In *Riley*, the United States Supreme Court held that, during a search incident to arrest, law enforcement cannot conduct a warrantless search of digital information on a cell phone found on an arrestee's person at the time of arrest. *Riley*, 573 U.S. at 386. To come to its conclusion, the Supreme Court weighed the minimal benefits of a cell phone

8

search regarding law enforcement safety and evidence preservation with the significant privacy concerns implicated by the immense amount of personal and intimate information on cell phones. *Riley*, 573 U.S. at 387-96.

In *VanNess*, Division One of this court relied on *Riley* to hold that the search incident to arrest exception did not apply to the search of a locked box inside an arrestee's backpack, which the arrestee was carrying at the time of arrest. *VanNess*, 186 Wn. App. at 156. The *VanNess* court distinguished *Byrd* based on the box being locked, and reasoned that after *Riley*, "a lawful arrest no longer provides categorical justification to search, without a warrant, all items found on an arrested person at the time of arrest." *VanNess*, 186 Wn. App. at 156, 160.

Aylward's reliance on *Riley* and *VanNess* fails for two reasons. First, the United States Supreme Court rejected *VanNess*'s reasoning regarding the categorical justification for search incident to arrest. *Birchfield v. North Dakota*, __ U.S. __, 136 S. Ct. 2160, 2175-76, 195 L. Ed. 2d 560 (2016). Thus, Aylward's argument regarding her privacy interest in the purse as exceeding law enforcement's interests in safety and evidence preservation is inconsequential. Because the purse was a personal effect considered part of Aylward's person at the time of her arrest, it was categorically subject to search. Second, the pouch inside was not locked. A search incident to a lawful arrest of an unlocked zippered pouch inside a purse is constitutional. *State v. Richards*, 11 Wn. App. 2d 84, 91, 450 P.3d 1238 (2019), *review denied*, 195 Wn.2d 1005 (2020).

Because a preview of this issue shows that her claim is not likely to succeed, Aylward has failed to show that this claimed error is manifest constitutional error and, thus, we do not address the issue.

II. INEFFECTIVE ASSISTANCE OF COUNSEL

Alternatively, Aylward argues that her trial counsel provided ineffective assistance by failing to move to suppress evidence discovered from the search of Aylward's purse. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). We review ineffective assistance of counsel claims de novo. *State v. Linville*, 191 Wn.2d 513, 518, 423 P.3d 842 (2018). To demonstrate that she received ineffective assistance of counsel, Aylward must show both (1) that defense counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *Linville*, 191 Wn.2d at 524. Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). Prejudice ensues if the result of the proceeding would have been different had defense counsel not performed deficiently. *Estes*, 188 Wn.2d at 458. Because both prongs of the ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018). To show counsel was ineffective for failing to move to suppress, a defendant must show that such a motion would have likely been granted. *State v. Hamilton*, 179 Wn. App. 870, 882, 320 P.3d 142 (2014). We review ineffective assistance of counsel claims based only on the record on appeal. *Linville*, 191 Wn.2d at 525.

Based on the record on appeal, Aylward cannot show that a motion to suppress would have likely been granted. As discussed above, the search of her purse was incident to a lawful

10

arrest, and her purse was a personal effect considered part of Aylward's person at the time of arrest. Because the search was lawful, Aylward cannot show prejudice. Accordingly, we hold that Aylward's ineffective assistance of counsel argument fails.

### III. LEGAL FINANCIAL OBLIGATIONS

In a supplemental brief, Aylward argues that because she is indigent, the trial court erred by imposing an interest accrual provision, court-appointed attorney fees, and a supervision assessment. Additionally, Aylward argues that the trial court did not conduct an individualized inquiry into her ability to pay before imposing discretionary costs. We remand to the trial court to strike the interest accrual provision, make a determination of indigency under RCW 10.101.010(3), and reconsider court-appointed attorney fees accordingly. However, we hold that the trial court properly imposed the supervision assessment.

RCW 10.01.160(3) now provides that the trial court shall not order a defendant to pay costs if a defendant is indigent as defined in RCW 10.101.010(3)(a) through (c). Similarly, RCW 9.94A.760(1) now provides that the trial court cannot order "costs" as described in RCW 10.01.160 if the defendant is indigent as defined in RCW 10.101.010(3)(a) through (c). RCW 10.01.160(2) limits costs "to expenses specially incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision." Recent legislation also prohibits trial courts from imposing interest accrual provisions on the nonrestitution portions of LFOs on indigent defendants. RCW 10.82.090.

A.    *Interest Accrual Provision*

Aylward argues that the trial court improperly imposed an interest accrual provision on nonrestitution LFOs. Trial courts are now prohibited from imposing an interest accrual provision

on nonrestitution LFOs. RCW 10.82.090. Here, the trial court imposed an interest accrual provision on nonrestitution LFOs. We remand to strike the interest accrual provision to comply with RCW 10.82.090.

B.       *Court-Appointed Attorney Fees*

Aylward argues that because she was indigent, the trial court improperly imposed court-appointed attorney fees. We remand for the trial court to make an explicit determination of indigency based on a RCW 10.101.010(3).

The legislature amended former RCW 10.01.160(3) (2015) to limit the type of LFOs a trial court can impose on an indigent defendant and to prohibit a trial court from ordering a defendant to pay costs "if the defendant at the time of sentencing is indigent as defined in RCW 10.101.010(3)(a) through (c)." RCW 10.01.160(3). However, when a defendant is not indigent as defined in RCW 10.101.010(3)(a) through (c), the trial court is required to consider the defendant's financial resources and the nature of the burden the payment of LFOs will impose before determining the amount and method of payment of costs. RCW 10.01.160(3). Court-appointed attorney fees are costs under RCW 10.01.160. *In re Pers. Restraint of Dove*, 196 Wn. App. 148, 155, 381 P.3d 1280 (2016).

RCW 10.101.010(3) defines four categories of "indigent." Subsection (a) describes people who receive certain types of public assistance. Subsection (b) defines indigent as a person who is involuntarily committed to a public mental health facility. Subsection (c) states a person who receives an annual income after taxes of 125 percent or less of the federal poverty level is indigent. When a defendant is indigent as defined in RCW 10.101.010(3), subsections (a), (b), or (c), a trial court is prohibited from imposing costs as defined in RCW 10.01.160(3).

But, a trial court is not prohibited from imposing those costs upon a defendant determined to be indigent under subsection (d). RCW 10.01.160(3).

However, under RCW 10.01.160(3), a sentencing court must take into consideration certain factors related to an individual defendant's financial ability before imposing discretionary LFOs. *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). "The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay." *Blazina*, 182 Wn.2d at 838. Factors that sentencing courts should consider during this individualized inquiry include "(1) employment history, (2) income, (3) assets and other financial resources, (4) monthly living expenses, and (5) other debts." *State v. Ramirez*, 191 Wn.2d 732, 744, 426 P.3d 714 (2018). "[T]he record must reflect that the trial court inquired into all five of these categories before deciding to impose discretionary costs." *Ramirez*, 191 Wn.2d at 744. This court reviews de novo whether a trial court conducted an adequate inquiry into a defendant's ability to pay. *Ramirez*, 191 Wn.2d at 742.

Here, the trial court acknowledged that Aylward was employed and earned some income. The trial court also acknowledged that Aylward was indigent for purposes of requiring appointed counsel, but the record is silent as to whether Aylward's annual income after taxes is 125 percent or less of the current federally established poverty level. Moreover, the trial court did not ask Aylward about any of the required *Ramirez* factors. Because it is impossible to determine which definition of "indigent" applies to Aylward based on the record on appeal, we remand for the

trial court to make an explicit determination of indigency based on RCW 10.101.010(3) and reconsider the court-appointed attorney fees accordingly.[4]

C.      *Supervision Assessment*

Aylward argues that the trial court improperly imposed a supervision assessment because it is a discretionary LFO and she was indigent. We disagree.

A trial court cannot order an indigent defendant to pay costs. RCW 10.01.160(3). However, RCW 10.01.160(2) limits costs "to expenses specially incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision."

Here, Aylward's supervision assessment appears to be imposed under RCW 9.94A.703(2)(d), which states, "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections]." The supervision assessment is a discretionary LFO. *State v. Lundstrom*, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018), *review denied*, 193 Wn.2d 1007 (2019).

However, the supervision assessment is not a discretionary "cost" merely because it is a discretionary LFO. Rather, the supervision assessment fails to meet the RCW 10.01.160(2) definition of a "cost" because it is not an expense specially incurred by the State to prosecute the defendant, to administer a deferred prosecution program, or to administer pretrial supervision.

---

[4] Even assuming the imposition of court-appointed attorney fees were proper following an indigency determination, the trial court failed to adequately inquire into Aylward's ability to pay before imposing LFOs. On remand, if the trial court imposes discretionary LFOs, the trial court must first inquire into the *Ramirez* factors.

No. 52681-6-II

As a result, the trial court properly imposed the supervision assessment on Aylward, regardless of her indigency. Further, because the supervision assessment is not a cost under RCW 10.01.160, the trial court was not required to conduct an inquiry into Aylward's ability to pay under RCW 10.01.160(3) before imposing it. *See State v. Clark*, 191 Wn. App. 369, 362 P.3d 309 (2015) (distinguishing fines from costs).

We affirm Aylward's conviction and supervision assessment. We remand for the trial court to strike the interest accrual provision, make an indigency determination under RCW 10.101.010(3), and reconsider court-appointed attorney fees accordingly.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

_____
Lee, C.J.

_____
Cruser, J.

15